# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

July 30, 2026

Thomas W. Briggs, Jr., Esquire
Lauren K. Neal, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, Delaware 19801

Jonathan M. Stemerman, Esquire
Armstrong Teasdale LLP
1007 North Market Street,
3rd Floor
Wilmington, Delaware 19801

Scott B. Czerwonka, Esquire
Wilks Law, LLC
4250 Lancaster Pike, Suite 200
Wilmington, Delaware 19805

> RE: *Neem International CV et al. v. Vadim Shulman et al.*,
> C.A. No. 2022-0187-LWW

Dear Counsel:

This letter opinion addresses the plaintiffs' motion for attorneys' fees, costs, and expenses against defendant Vadim Shulman. The plaintiffs invoke the bad faith exception to the American Rule. Shulman opposes the motion, arguing that the exception does not apply and that the fees sought are disproportionate to the plaintiffs' limited success. For the reasons that follow, the motion is granted in part.

## I. RELEVANT BACKGROUND

The background of this dispute is detailed in my December 31, 2025 Post-Trial Memorandum Opinion.[1]  Pathway Genomics Corporation was a once-promising startup that fell into financial distress.[2]  Shulman, its largest outside investor, moved from a passive role to taking over the company— including its management and board of directors.[3]  He purportedly loaned millions of dollars to the company through convertible notes and directed corporate officers to sign security agreements collateralizing those notes with substantially all of the company's assets.[4]  These actions were taken without board approval, rendering the debt unauthorized and unenforceable.[5]

As the company's financial position worsened, Shulman staged an Article 9 foreclosure sale.[6]  He and his personal counsel sidelined independent directors, populated the board with loyalists and patsies, manufactured approvals, and forged

---

[1] Post-trial Mem. Op. (Dkt. 295) ("Mem. Op.").

[2] *Id.* at 1, 3-9.

[3] *Id.* at 1, 5-9.

[4] *Id.* at 9-12, 17-18.

[5] *Id.* at 55-58, 60.

[6] *Id.* at 27-32.

letters to stockholders.[7]  At the conclusion of the auction, an entity owned by Shulman acquired Pathway's assets via a credit bid of the invalid debt, wiping out the plaintiffs' contractual liquidation preferences.[8]

The plaintiffs filed this action in February 2022 and advanced thirteen claims against Shulman and other defendants.[9]  After trial, I found in favor of the defendants on the plaintiffs' ten derivative claims because Pathway's corporate charter was void due to unpaid franchise taxes, which deprived the plaintiffs of standing to sue on the entity's behalf.[10]  I found in favor of the plaintiffs on their direct claim for breach of the liquidation preference in Pathway's certificate of incorporation.[11]  I also concluded that Shulman caused Pathway to commit that breach through bad-faith conduct in violation of his duty of loyalty.[12]  The plaintiffs were awarded equitable restitution of $1,849,437.93, representing their ratable share of the distributable assets.[13]

---

[7] *Id.* at 53-54, 58-59.

[8] *Id.* at 31-32.

[9] Verified Compl. for Breach of Fiduciary Duties (Dkt. 1).

[10] Mem. Op. 35-36.

[11] *Id.* at 49-50.

[12] *Id.* at 66.

[13] *Id.* at 74-77.

The plaintiffs then filed the present motion, seeking $3,530,230.80 in attorneys' fees and expenses.[14]  Shulman opposes the motion.[15]

## II.    ANALYSIS

Under Delaware law, the American Rule serves as the baseline, meaning that litigants are generally expected to bear their own attorneys' fees.[16]  The court may depart from this default under recognized exceptions, including when a party engages in bad-faith conduct.[17]  The bad faith exception allows the court to shift fees in "extraordinary circumstances" to deter abusive behavior and safeguard the integrity of the judicial process.[18]  To invoke the exception, the moving party must demonstrate by "clear evidence" that the opposing party acted in "subjective bad faith."[19]  Satisfying this "more stringent 'clear evidence' standard of proof"

---

[14] Pls.' Mot. for Attys' Fees, Costs, and Expenses (Dkt. 298) ("Pls.' Mot."); *see also* Pls.' Reply in Further Supp. of Mot. for Attys' Fees, Costs, and Expenses (Dkt. 308) ("Pls.' Reply").

[15] Def.'s Opp'n to Pl.'s Mot. for Attys' Fees, Costs, and Expenses (Dkt. 306) ("Def.'s Opp'n").

[16] *See Montgomery Cellular Hldg. Co. v. Dobler*, 880 A.2d 206, 227 (Del. 2005).

[17] *See Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Est. Fund*, 68 A.3d 665, 687 (Del. 2013) (outlining exceptions to the American Rule).

[18] *Shawe v. Elting*, 157 A.3d 142, 149 (Del. 2017) (quoting *Montgomery Cellular*, 880 A.2d at 227).

[19] *Id.* at 150.

requires a showing that the conduct was "so fraudulent, frivolous, vexatious, wanton or oppressive as to amount to egregiousness."[20]

Here, the plaintiffs assert that Shulman's conduct preceding and during this litigation justifies an award of fees. They have met their heavy burden.

### A. Entitlement

The plaintiffs ask that I shift the attorneys' fees and expenses they incurred prosecuting this action. They assert that Shulman's egregious pre-litigation conduct, along with his obstructive behavior during discovery, satisfies the bad faith exception to the American Rule.[21] I agree. The record provides clear evidence that Shulman engaged in an extraordinary pattern of subjective bad faith.

Pre-litigation, Shulman's conduct was not a mere breach of contract, but extreme disloyalty.[22] As detailed in the Memorandum Opinion, he orchestrated a sham Article 9 sale to acquire Pathway's assets for his own entity, without regard to the plaintiffs' liquidation preferences or his fiduciary duties.[23] To execute this scheme, Shulman and his personal counsel manufactured board approvals through

---

[20] *Reagan v. Randell*, 2002 WL 1402233, at *3 (Del. Ch. June 21, 2002) (citation omitted).

[21] *See* Pls.' Mot. ¶¶ 18, 24.

[22] *See* Mem. Op. 55.

[23] *Id.* at 2, 31.

coercion and fabrication, forged letters to stockholders, and directed corporate officers to sign clandestine security agreements—bypassing the board.[24]

Shulman's bad faith extended into the litigation itself. Rather than concede the invalidity of the debt or impropriety of the foreclosure process, he forced the plaintiffs to incur massive costs to uncover the truth. He consistently obfuscated, resisting discovery to the point of warranting sanctions.[25] During his deposition, for example, he admitted to his evasiveness, testifying that "maybe [he] [was] not saying the entire truth" because he was "not on a lie detector."[26]

Shulman opposes the plaintiffs' motion by arguing that it is improperly based on the same conduct underlying the substantive claims. Relying on *Versata Enterprises, Inc. v. Selectica, Inc.*, he contends that the bad faith exception does

---

[24] *Id.* at 54, 58-59.

[25] Pls.' Mot. ¶ 24 (citing Dkts. 114, 143); *see also* Tr. of Oral Arg. and Rulings of the Ct. on Pls.' Mot. to Compel (Dkt. 127).

[26] Pls. Mot. ¶ 24 (quoting Shulman Dep. 11, 33 (Dkts. 247, 248)).

not apply to pre-litigation conduct giving rise to a cause of action.[27]  That case is

inapposite.[28]

In *Versata*, the challenged conduct—deliberately triggering a poison pill and

aggressively negotiating a settlement—constituted the factual basis for the

underlying declaratory judgment claim.[29]  Here, Shulman and his personal counsel

fabricated corporate records, including board minutes and loan materials, to create

a false narrative.[30]  In contrast to *Versata*, where the pre-litigation conduct gave

rise to a claim, Shulman's actions infected the litigation process and forced the

plaintiffs to incur substantial costs to unravel the deception.[31]  These actions fit

squarely within the bad faith exception.[32]

---

[27] Def.'s Opp'n ¶¶ 11-12 (citing *Versata Enters., Inc. v. Selectica, Inc.*, 5 A.3d 586, 607 (Del. 2010) ("[T]he bad faith exception . . . 'does not apply to the conduct that gives rise to the substantive claim itself.'" (citation omitted))).

[28] Shulman did not engage with the plaintiffs' authorities recognizing that sufficiently egregious pre-litigation conduct may support fee shifting.  *See* Pls.' Reply ¶¶ 1, 3-4; *see also Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

[29] *Versata*, 5 A.3d at 607-08.

[30] Mem. Op. 58-59.

[31] *See Versata*, 5 A.3d at 607-08; *see also Star Am. Rail HoldCo, LLC v. Cathcart*, 2024 WL 5239938, at *10-11 (Del. Ch. Dec. 17, 2024) (shifting fees for pre-litigation conduct that involved manufacturing false financial statements to trigger a contractual right and then doubling down on that falsity in litigation).

[32] *See In re Straight Path Commc'ns Inc.*, 2024 WL 4602914, at *5 (Del. Ch. Oct. 29, 2024) (explaining that an award of attorneys' fees is appropriate "where the

### B.     Apportionment

The plaintiffs seek $3,530,230.80 in attorneys' fees, costs, and expenses.[33] Shulman asserts that this request is unreasonable because the plaintiffs succeeded on only one of their thirteen causes of action.[34] He also questions the sufficiency of the plaintiffs' fee affidavits and complains of excessive staffing and unreasonable hours billed to failed claims.[35]

Delaware courts assess the reasonableness of fee awards by reference to the factors in Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct.[36] But determining reasonableness does not require the court to examine each time entry and disbursement.[37] Nor must a fee award be mathematically prorated by a

---

judge concludes a litigant brought a case in bad faith or through his bad faith [litigation] conduct increased the litigation's cost"), *aff'd*, 351 A.3d 448 (Del. 2025) (TABLE); *Scion Breckenridge*, 68 A.3d at 687 (holding fees may be shifted when pre-litigation conduct involves fraud or is "totally unjustified").

[33] Pls.' Mot. ¶¶ 14, 15.

[34] Def.'s Opp'n ¶¶ 2, 28.

[35] *Id.* ¶¶ 19-23, 41-43.

[36] *See Mahani v. Edix Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007) (citing Del. Lawyers' R. Prof'l Conduct 1.5(a)).

[37] *Sorrento Therapeutics, Inc. v. Mack* (*Sorrento II*), 2026 WL 906110, at *5 (Del. Ch. Apr. 2, 2026) (ORDER).

party's win-loss ratio on individual counts.[38]  When a plaintiff achieves mixed success on claims that arise from a "common factual predicate[,]" the court may award a flat percentage of the overall fees.[39]

In this case, the plaintiffs' fees cannot be cleanly segregated claim by claim. Their successful direct claim for breach of the liquidation preference and their failed derivative claims rested on the same factual predicate.  The legal work required to expose Shulman's breach of his duty of loyalty was likewise inextricably intertwined across all counts.

Even so, an award of the plaintiffs' full fees is unwarranted.  Ten of the plaintiffs' thirteen claims failed for a threshold reason: the plaintiffs lacked derivative standing because Pathway's corporate charter was void due to unpaid franchise taxes.[40]  That standing defect counsels against awarding the full amount requested.[41]

---

[38] *See Mahani*, 935 A.2d at 248 (affirming the refusal to "give primary weight to [the] limited trial success" when assessing reasonableness).

[39] *Sorrento Therapeutics, Inc. v. Mack* (*Sorrento I*), 2025 WL 2172268, at *19 (Del. Ch. July 31, 2025).

[40] *See* Mem. Op. 35-36; *see also* 8 *Del. C.* § 510 (stating that the charter of a corporation that fails to pay its franchise taxes becomes "void" and the corporation becomes "inoperative").

[41] *See* Mem. Op. 36; *cf.* Def.'s Opp'n ¶ 41 (noting that plaintiffs' counsel billed 149.6 hours researching and drafting the complaint).

Balancing the severity of Shulman's bad faith against the plaintiffs' standing oversight and limited success, I conclude that an award of one-third of the requested fees and expenses is appropriate. This approach aligns with recent precedent involving similar fiduciary and litigation misconduct coupled with partial success.[42] The reduction also accounts for Shulman's objections regarding staffing inefficiencies and time billed to failed claims, making a line-by-line audit unnecessary.[43] Thirty-three percent of the requested fees and expenses equals $1,164,976.16.

To ensure this award is reasonable, I must weigh the relevant factors in Rule 1.5(a). The litigation was complex and painstaking, driven in part by Shulman's obstruction.[44] The plaintiffs were represented by skilled Delaware counsel whose hourly rates are customary for practitioners of their caliber.[45] At the same time, the plaintiffs' $3,530,230.80 fee request far exceeds their

---

[42] *See Sorrento I*, 2025 WL 2172268, at *19-20 (awarding one-third of a $16 million fee request where the plaintiffs were only partially successful, but the defendant breached its duty of loyalty).

[43] *See* Def.' Opp'n ¶¶ 41-43; *see also Sorrento II*, 2026 WL 906110, at *4 (rejecting a request for line-item reductions where the court awarded a flat percentage of overall fees).

[44] Del. Lawyers' R. Prof'l Conduct 1.5(a)(1).

[45] *Id.* at 1.5(a)(3), 1.5(a)(7).

$1,849,437.93 monetary recovery.[46]  Discounting the request to 33% brings the fee award into proportion with the result achieved.

## III.  CONCLUSION

Fees are shifted, in part, under the bad faith exception to the American Rule. The plaintiffs are entitled to fees of $1,164,976.16.  This amount is reasonable, proportionate, and sufficient to address Shulman's bad faith without overcompensating the plaintiffs.  IT IS SO ORDERED.

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

---

[46] *See id.* at 1.5(a)(4) (explaining that a reasonable fee includes consideration of "the amount involved and the results obtained").